STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 1099

S. HEBERT, ET AL.

VERSUS

ST. MARY PARISH, ET AL.

Judgment Rendered: **APR 1 9 2024**

* * * * *

On Appeal from the
16th Judicial District Court
Parish of St. Mary, State of Louisiana
Trial Court No. 134142

The Honorable Lewis H. Pitman, Jr., Judge Presiding

* * * * *

Tracy P. Curtis                          Attorney for Plaintiffs-Appellants,
Lafayette, Louisiana                     Shelton and Sandie Hebert

David M. Thorguson                       Attorney for Defendant-Appellee,
Morgan City, Louisiana                   St. Mary Parish

* * * * *

BEFORE: WELCH, WOLFE, AND STROMBERG, JJ.

Welch, Jr. dissents and assigns reasons

**WOLFE, J.**

Plaintiffs appeal a summary judgment dismissing their personal injury claims against St. Mary Parish. After conducting a *de novo* review, we affirm.

## BACKGROUND

On November 26, 2018, Shelton Hebert fell into an open garbage receptacle above a large transfer trailer at the St. Mary Parish West End Pick-Up Station (the Pick-Up Station) located in Franklin, Louisiana. Mr. Hebert was injured as a result of the incident and he, along with his wife, Sandie Hebert, filed this action for damages against St. Mary Parish (the Parish) and others on September 12, 2019.[1]

The record reveals that, Mr. Hebert was injured when he attempted to throw trash into one of the transfer trailers at the Pick-Up Station's open receptacle located directly above the transfer trailer. As he had done on prior occasions, Mr. Hebert backed his pickup truck onto a ramp near the open receptacle so that the end of his tailgate was hanging above the transfer trailer, which sat directly below the receptacle. While dragging garbage bags from his truck bed, Mr. Hebert lost his balance when one of the bags snagged. His momentum caused his body to move forward and he fell approximately 8-10 feet down into the open receptacle, landing on garbage. Mr. Hebert's injuries required that he be airlifted for emergency care. Mr. and Mrs. Hebert allege that their resulting injuries were caused by an unreasonably dangerous condition at the Pick-Up Station, that the Parish knew or should have known about the dangerous condition, and that the Parish failed to warn the public about the danger.

---

[1] The petition contained a typographical error referencing the year of the accident as 2019; however, the record reflects the correct date of the accident was November 26, 2018. The named defendants included St. Mary Parish, the St. Mary Parish Public Works Department, the St. Mary Parish West End Pickup Station, and the State of Louisiana Department of Environmental Quality (DEQ). This appeal concerns the summary judgment dismissal of the Heberts' claims against St. Mary Parish. DEQ was dismissed by summary judgment on November 5, 2021.

On May 4, 2022, the Parish filed a motion for summary judgment, asserting that the Heberts could not establish any "defect" or unreasonably dangerous condition at the Pick-Up Station that caused or contributed to Mr. Hebert's injuries. In support of its motion for summary judgment, the Parish relied on: (1) the petition; (2) the affidavit of Henry C. LaGrange, the Chief Administrative Officer for the Parish, as well as photographs attached to his affidavit; (3) excerpts from Mr. Hebert's deposition testimony; (4) Mr. Hebert's certified medical records from the hospital emergency department; and (5) deposition testimony of an eyewitness to the accident, Jason Pellegrin. Essentially, Mr. LaGrange's affidavit established that the Parish provided residential curbside waste collection service, but allowed the public to dump trash in the transfer trailers at the Pick-Up Station, which was designed primarily for use by garbage collection trucks to accommodate large loads of garbage. The Parish pointed to Mr. Hebert's deposition testimony where he acknowledged that he had been to the Pick-Up Station on prior occasions, that the open receptacle above the transfer trailer would "be obvious to a blind man," and that he knew it was "dangerous." The Parish also relied on the deposition testimony of an eyewitness, Mr. Pellegrin, indicating that Mr. Hebert had backed up "too close" to the open receptacle. Mr. Pellegrin stated that there was a pipe rail near the end of the ramp, which served as a wheel stop to keep vehicles from backing into the open receptacle.

The Heberts filed an opposition to the Parish's motion for summary judgment on March 13, 2023, relying on an affidavit by professional civil engineer, Calvin C. Thomas, Jr., and his investigative report and photographs attached to his affidavit. Mr. Thomas opined that the Parish should have known of the unreasonably dangerous fall potential at the public-access receptacles, yet the Parish did not provide any safety measures to prevent falls or warnings of the danger. Relying on Occupational Safety and Health Standards (OSHA), Mr. Thomas concluded that the

3

public should not have been allowed access to the receptacles at the Pick-Up Station due to the fall hazard. Additionally, the Heberts objected to the use of Mr. Hebert's medical records as improper summary judgment evidence to establish facts regarding how the accident occurred.

The Parish filed a reply memorandum in support of its motion for summary judgment, initially pointing out that the motion should be considered unopposed because the Heberts' opposition was filed less than fifteen days prior to the hearing scheduled for March 21, 2023. The Parish noted, however, that even if the Heberts' opposition was considered, the Parish was entitled to summary judgment as a matter of law because any risk posed by the receptacles at the Pick-Up Station was open and obvious to everyone regardless of whether a person was standing in the bed of the pickup truck or on the ground beside the pickup truck. Further, the Parish objected to the affidavit and report of Mr. Thomas as incompetent expert testimony with no law or applicable regulations to support his conclusions.[2] Considering that the record reflects that the Heberts' opposition was filed less than fifteen days prior to the hearing on the motion for summary judgment as mandated by La. Code Civ. P. art. 966(B)(2), we are unable to consider the Heberts' opposition and exhibits. See **Auricchio v. Harriston**, 2020-01167 (La. 12/10/21), 332 So.3d 660, 663; **Rainey v. Knight**, 2023-0133 (La. App. 1st Cir. 11/3/23), 378 So.3d 116, 123.

At the hearing on the motion for summary judgment on March 21, 2023, the trial court ordered the parties to submit post-hearing memoranda regarding a Louisiana Supreme Court case decided a few days before the hearing, **Farrell v. Circle K Stores, Inc.**, 2022-00849 (La. 3/17/23), 359 So.3d 467. The parties submitted their post-hearing memoranda as ordered, and shortly thereafter, the trial

---

[2] The Parish asserts that Mr. Thomas's affidavit did not comply with the requirements of La. Code Civ. P. art. 967. The Parish also argues that OSHA regulations apply to employers, but not political subdivisions of the state such as the Parish. See 29 U.S.C. § 652(5).

4

court issued written reasons for judgment on May 4, 2023. A judgment was signed in accordance with the reasons on May 26, 2023, granting the Parish's motion for summary judgment and dismissing the Heberts' case with prejudice and at their cost. The Heberts appeal.[3]

## LAW AND ANALYSIS

An appellate court reviews the grant or denial of summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. **McDowell v. Feldman**, 2021-0462 (La. App. 1st Cir. 12/22/21), 341 So.3d 71, 74, writ denied, 2022-00158 (La. 3/15/22), 334 So.3d 394. Because our review is *de novo*, we afford no deference to the trial court's underlying reasoning for its judgment, or to the legal standard or analysis applied by the trial court. See **Tucker v. Chatfield**, 2023-0343 (La. App. 1st Cir. 11/9/23), ___ So.3d ___, ___, 2023 WL 7410052, *4. See also **John River Cartage, Inc. v. Louisiana Generating, LLC**, 2020-0162 (La. App. 1st Cir. 3/4/20), 300 So.3d 437, 453 n.12. However, as to the trial court's rulings on objections raised in timely filed oppositions or reply memoranda, this court applies an abuse of discretion standard. See **Loupe v. Roman Catholic Church of Diocese of Baton Rouge**, 2022-1151 (La. App. 1st Cir. 5/9/23), 368 So.3d 583, 586-587; **Pottinger v. Price**, 2019-0183 (La. App. 1st Cir. 10/23/19), 289 So.3d 1047, 1053.

---

[3] The Heberts contend the trial court failed to correctly analyze the risk/utility balancing test, ignored the unreasonably dangerous condition, and improperly weighed and considered evidence. The Heberts also argue that the trial court erred if it placed any reliance on the statements in Mr. Hebert's emergency department medical record as to how the accident occurred, to which they objected. Because the opposition memorandum wherein the objection was raised was not timely filed, the trial court did not need to consider the objection. See La. Civ. Code P. art. 966(D)(2); **Robinson v. Pointe Coupee Parish School Board**, 2023-0215 (La. App. 1st Cir. 2/21/24), 2024 WL 701600, *3 (unpublished). In our review of the motion for summary judgment, this court shall consider any documents to which no objection is made to determine, *de novo*, if we should give any evidentiary value to the document. See **Campbell v. Hospital Service District No. 3 for Parish of Lafourche**, 2022-1118 (La. App. 1st Cir. 8/1/23), 371 So.3d 543, 549 n.2. Based on this court's ultimate determination that whether Mr. Hebert was standing on the ground or was in the bed of his truck when he lost his balance and fell is immaterial, we need not consider this issue.

A trial court must grant a motion for summary judgment if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3) and (4).[4] The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. See La. Code Civ. P. art. 966(A)(2).

The burden of proof rests with the mover; nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. Code Civ. P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Id.** When a motion for summary judgment is made and supported as provided in La. Code Civ. P. art. 967(A),[5] an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in La. Code Civ. P. art. 967(A), must set forth specific facts showing that there is a genuine issue for

---

[4] Although the Legislature amended La. Code Civ. P. art. 966 by La. Acts 2023, No. 317, § 1 and La. Acts 2023, No. 368, § 1, effective August 1, 2023, this court has determined that the amendments are substantive and cannot be applied retroactively. Accordingly, we apply the version of Article 966 in effect at the time of the hearing on the motion for summary judgment. **Ricketson v. McKenzie,** 2023-0314 (La. App. 1st Cir. 10/4/23), ___ So.3d ___, ___, 2023 WL 7037495, *4.

[5] Louisiana Code of Civil Procedure article 967(A) provides in part that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

trial. La. Code Civ. P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. See La. Code Civ. P. arts. 966(A)(3) and 967(B).

The Heberts' claims against the Parish are based on La. Civ. Code arts. 2317 and 2317.1, as limited by La. R.S. 9:2800. Louisiana Civil Code article 2317 provides that we are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. However, La. Civ. Code art. 2317.1 modifies Article 2317 to further require proof that (1) the owner or custodian of a defective thing has knowledge of the defect, (2) the damage could have been prevented by the exercise of reasonable care, and (3) the failure to exercise reasonable care. **Garrett v. Department of Children and Family Services**, 2023-0412 (La. App. 1st Cir. 11/9/23), ___ So.3d ___, ___, 2023 WL 7403596, *2. Custodial liability under La. Civ. Code art. 2317 is further limited as to public entities such as the Parish by La. R.S. 9:2800, which requires additional proof that the public entity had notice and opportunity to repair the defect. **Garrett**, ___ So.3d at ___, 2023 WL 7403596 at *2.

As such, in order to prove that the Parish (a public entity pursuant to La. R.S. 9:2800(G)(1)) is liable for damages caused by the condition of a thing, the Heberts must establish: (1) custody or ownership of the defective thing by the Parish; (2) the condition of the thing created an unreasonable risk of harm; (3) the Parish had actual or constructive notice of the particular condition that created the unreasonable risk of harm; (4) the Parish failed to take corrective action within a reasonable time; and (5) the defective thing was a cause-in-fact of the Heberts' injuries. See **Jefferson v. Nichol[l]s State University**, 2019-1137 (La. App. 1st Cir. 5/11/20), 311 So.3d 1083, 1085, writ denied, 2020-00779 (La. 11/4/20), 303 So.3d 623. Failure to meet any one of these statutory requirements will defeat a claim against a public entity. **Id.**

7

Whether a claim arises in negligence or in premises liability, the traditional duty/risk analysis is the same, and the result under either should be the same. **Farrell**, 359 So.3d at 473. At trial, the Heberts would bear the burden of proving all of the elements of their claims against the Parish. Thus, for the Parish to prevail on summary judgment, it was required to show an absence of factual support for any of the elements of the Heberts' cause of action. Under the duty/risk analysis, the Heberts must prove five separate elements: (1) the Parish had a duty to conform its conduct to a specific standard (duty element); (2) the Parish's conduct failed to conform to the appropriate standard (breach of duty element); (3) the Parish's substandard conduct was a cause-in-fact of the Heberts' injuries (cause-in-fact element); (4) the Parish's substandard conduct was a legal cause of the Heberts' injuries (scope of duty element); and (5) proof of actual damages (damages element). See **Farrell**, 359 So.3d at 473.

The Heberts contend that the trial court failed to correctly analyze the duty/risk analysis for a breach of duty according to **Farrell**, and thus, the trial court erred in concluding that the open receptacle did not constitute an unreasonably dangerous condition because it was "open and obvious." For a hazardous condition to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. **Farrell**, 359 So.3d at 478. The open and obvious concept asks whether the complained-of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. **Id**. Whether Mr. Hebert had knowledge of the condition is irrelevant in determining whether the thing is defective. The plaintiff's knowledge is appropriately considered in assessing fault after a trial, but is not appropriate for summary judgment proceedings. **Id**. The Parish maintains that the Heberts will be unable to prove a

breach of duty. We will now conduct the duty/risk analysis as discussed and clarified in **Farrell**, 359 So.3d at 473.

The existence of a duty is a question of law. **Farrell**, 359 So.3d at 473. In this case, the general rule of law is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. **Id**. See also La. R.S. 9:2800 and La. Civ. Code arts. 2317 and 2317.1. It is undisputed that the Parish is the owner and custodian of the Pick-Up Station where Mr. Hebert was injured. As such, the Parish owed the outlined duty to Mr. Hebert.

The breach of duty element in the duty/risk analysis is a question of fact or a mixed question of law and fact. **Farrell**, 359 So.3d at 474. To make this determination, Louisiana courts apply a risk/utility balancing test, which considers four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obvious and apparent nature of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. **Id**. We now consider each of these factors as they apply to this case, especially focusing on whether the Heberts will be able to prove that the Parish breached the duty owed to them.

*Utility of the Complained-of Condition*

The condition that Mr. Hebert claims is unreasonably dangerous is the open receptacle at the Pick-Up Station. According to the Parish's Chief Administrative Officer, Mr. LaGrange, the Parish's Pick-Up Station was built primarily as a means to transfer solid waste from the garbage trucks collecting residential curbside waste from the western part of St. Mary Parish to the transfer trailers at the Pick-Up Station. The process creates a more efficient waste collection system in the parish by

9

allowing the garbage trucks operating in the western part of the parish to dump their loads on that side of the parish instead of driving across the parish to dump at the landfill. Additionally, due to the large capacity of the transfer trailers and their compacting ability, more waste can be hauled to the landfill by one trip with the trailers compared to several trips by the residential garbage collection trucks. Thus, the open receptacle, together with the transfer trailers at the Pick-Up Station, are part of a system that better facilitates waste collection in the Parish, which is evidence of the condition's utility. The Heberts did not offer any evidence that countered the utility of the waste collection system in the Parish.

*Likelihood and Magnitude of the Harm,*
*Including the Obviousness and Apparentness of the Condition*

The likelihood of harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. **Farrell**, 359 So.3d at 474. The magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each. This factor includes a consideration of the open and obviousness of the condition. **Id.** The evidence shows that the open receptacle was large and obvious. It was clearly apparent to all who approached the receptacle that it was a large open space to dump trash. Interestingly, Mr. Hebert readily testified at his deposition that the open receptacle was "obvious to a blind man," and the photographic evidence clearly confirms how obvious the opening was to anyone near the receptacle. The obviousness of the open receptacle was apparent to anyone, whether a person was seated in a vehicle, standing beside a vehicle, or standing in the bed of a pickup truck.

On appeal, the Heberts point to a factual dispute as to whether Mr. Hebert was standing on the ground or in the bed of his pickup truck when he lost his balance and fell into the receptacle. We find that dispute to be immaterial to the question of

whether the receptacle was open and obvious. Simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. See **Elee v. White**, 2021-0229 (La. App. 1st Cir. 10/21/21), 332 So.3d 97, 100-101, writ denied, 2021-01732 (La. 1/19/22), 331 So.3d 329. As the trial court stated in written reasons, "The more apparent and obvious a condition is, the more likely it is that individuals will exercise reasonable caution towards it, thereby decreasing the likelihood of harm." Because anyone throwing trash away at the Pick-Up Station would be very aware of the large open receptacle, it is reasonable to expect people to avoid the opening and to act with caution while dumping trash near the edge of the opening. Moreover, an accident alone does not support the imposition of liability. See **Moore v. BRP Investments, L.L.C.**, 2023-0280 (La. App. 1st Cir. 11/7/23), 378 So.3d 792, 799, writ denied, 2023-01598 (La. 2/6/24), 378 So.3d 753. Thus, we are unable to conclude that the open receptacle at the Pick-Up Station presented an unreasonable risk of harm. The evidence does not support a finding of a breach of duty by the Parish in this case.

*Cost of Preventing the Harm*

The record is void of evidence concerning the cost of preventing the harm posed by the open receptacle. Therefore, we will not consider this factor.

*Nature of Plaintiff's Activities in Terms of Social Utility or*
*Whether the Activities were Dangerous by Nature*

We now consider Mr. Hebert's action of taking his garbage to the Pick-Up Station rather than allowing the Parish to pick up his trash curbside at his residence. Clearly, Mr. Hebert's activities were important to him in ridding his property of trash before the residential pick-up occurred, but that does not weigh heavily as a consideration in determining that the Pick-Up Station's open receptacle was an unreasonably dangerous condition. The activity of throwing out garbage is not dangerous by nature, but doing so while parked "too close" to the edge of a ramp

11

leading to an open receptacle is reason for caution. The evidence reveals that Mr. Hebert's tailgate was open and extended out over the open receptacle, exposing him to a potentially dangerous situation.

Considering all of the evidence, we find that the Heberts have failed to show that the Parish breached the duty of care owed to them. Consequently, summary judgment in favor of the Parish is mandated by law.[6] Further, whether the Parish failed to eliminate the risk of someone falling into the opening or to post warnings about the open receptacle is irrelevant in this instance, since we find no proof that the open receptacle constituted an unreasonably dangerous condition. Mere allegations and speculation are not enough to defeat a properly supported motion for summary judgment. **Moore**, 378 So.3d at 299.

## CONCLUSION

For the stated reasons, we affirm the trial court's May 26, 2023 judgment granting St. Mary Parish's motion for summary judgment and dismissing Shelton and Sandie Hebert's claims against St. Mary Parish. All costs of this appeal are assessed to Shelton and Sandie Hebert.

**AFFIRMED.**

---

[6] Given our ruling that the Parish did not breach a duty, we pretermit any further discussion of the cause-in-fact element, the scope of duty element, and the damages element. See **Farrell**, 359 So.3d at 479.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

**2023 CA 1099**

S. HEBERT, ET AL.

VERSUS

ST. MARY PARISH, ET AL.

**WELCH, J., *dissenting*.**

I must respectfully dissent from the majority's opinion. Based on the undisputed facts established by St. Mary Parish and the exhibits attached to their motion for summary judgment, I find that reasonable persons could find that the open garbage receptacle above the large transfer trailer at the Pick-Up Station was unreasonably dangerous, *i.e.*, reasonable persons could disagree that the complained-of condition was not unreasonably dangerous. See **Farrell v. Circle K Stores, Inc.**, 2022-00849 (La. 3/17/23), 359 So.3d 467, 478 ("Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous[.]"). I find that St. Mary Parish did not meet its initial burden as mover on the motion for summary judgment under La. C.C.P. art. 966(D)(1)—the motion for summary judgment must be properly supported by the moving party, *i.e.*, the mover must establish the material facts through its supporting documentary evidence and make a *prima facie* showing that the motion for summary judgment should be granted. Therefore, I find that the burden never shifted to the plaintiff, Mr. Hebert, to produce factual support sufficient to establish the existence of a genuine issue of material fact or that St. Mary Parish is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1). See also **Bass v. DISA Global Solutions, Inc.**, 2020-0071 (La. App. 1 Cir. 12/30/20), 318 So.3d 909, 916, writ denied, 2021-00147 (La. 3/23/21), 313

So.3d 273. Accordingly, I would reverse the trial court's grant of summary judgment in favor of St. Mary Parish. For these reasons, I respectfully dissent.